**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

**16-CR-76V**

**-v-**

**MICHAEL PETTWAY,**

**Defendant.**

---

**REPORT, RECOMMENDATION AND ORDER**

This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions.

**PRELIMINARY STATEMENT**

The defendant, Michael Pettway ("the defendant"), is charged in a superseding indictment, along with the co-defendant, Collins Pettway, with having violated Title 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B) and 856(a)(1) and Title 18 U.S.C. §§ 924(c)(1)(A)(i). Dkt. #12. The defendant has filed a motion wherein he seeks suppression of physical evidence seized s a result of alleged violations of his Fourth Amendment rights. More specifically, he claims that the search warrant issued by Buffalo City Court Judge Wray on February 27, 2015 authorizing the search of premises located at 460 Eggert Road, Apartment 1, Buffalo, New York was invalid since it was not based on probable cause; lacked particularity; was based on "material and false allegations that were made knowingly and in reckless disregard for the truth;" was

"overly broad;" and was improperly executed. Dkt. #29, p. 25, ¶ 85. As to his claim that the warrant was based on "material and false allegations that were made knowingly and in reckless disregard for the truth," the defendant requests a *Franks* hearing. Dkt. #29, p. 32, ¶ 50.

The defendant also seeks suppression of "court ordered DNA evidence taken from him pursuant to an Order issued by New York State Supreme Court, Erie County on or about August 5, 2015 on the basis that the Order was issued "in clear violation of CPL §240.40(2)" of New York Criminal Procedure Law. Dkt. #29, p. 26, ¶s 91-93; Dkt. #36, pp. 6-7, ¶s 22-29.

The defendant also seeks suppression of evidence "seized or discovered as a result of [his] arrest" since such arrest on July 16, 2015 was illegal since there was no probable cause for making such arrest. Dkt. #29, p. 21, ¶ 72.

The government has filed a response in opposition to the defendant's motion. Dkt. #41.

## FACTS[1]

On February 27, 2015, Detective Timothy Mulhern of the City of Buffalo Police Department ("BPD") and a confidential informant known to Detective Mulhern appeared before Buffalo City Court Judge Wray for the purpose of obtaining a search warrant authorizing the search of a residence located at 460 Eggert Road, Buffalo, New

[1] The facts are taken from the filings of the defendant and the government.

York.  In support of this application, Detective Mulhern submitted a sworn application setting forth a factual basis to establish probable cause for the issuance of the search warrant.  The confidential informant was identified to Judge Wray and placed under oath by Judge Wray and testified as to his/her knowledge regarding the illegal sale and purchase of narcotic drugs at 460 Eggert Road, Buffalo, New York.  Based on the sworn application of Detective Mulhern and the sworn testimony of the confidential informant, Judge Wray found probable cause for the issuance of a search warrant authorizing the search of Apartment 1 located at 460 Eggert Road, Buffalo, New York.

On March 7, 2015, police officers of the BPD executed the aforesaid search warrant and seized approximately three pounds of cocaine, two loaded handguns, two boxes of ammunition, four cell phones, scales, packaging material and a large quantity of cash.  It is this evidence which the defendant seeks to suppress from use at trial.

## DISCUSSION AND ANALYSIS

### A.  Search of 460 Eggert Road, Buffalo, New York

Although the defendant asserts in his affidavit sworn to March 29, 2017 that he is "not the owner or tenant of record of [Apartment 1, 460 Eggert Road, Buffalo, New York]" and that he did not "exercise dominion and control over the subject residence or its contents" on March 7, 2015, he claims that he had an expectation of

privacy in said residence because he “frequently visited and slept overnight at 460 Eggert Rd., Apt. #1, Buffalo, N.Y. and used the address to receive and collect mail.” Dkt. #36, p. 2, ¶s 7-9.

Defense counsel claims that the search warrant authorizing the search of Apartment 1, 460 Eggert Road, Buffalo, New York was invalid since it was not based on probable cause and that the sworn application of Detective Mulhern and the sworn testimony of the confidential informant “contained material and false allegations that were made knowingly and in reckless disregard for the truth. Dkt. #29, pp. 24-25, ¶ 85. However, the defendant and defense counsel failed to state what statements in support of the search warrant application were false.

In determining whether probable cause exists for the issuance of a search warrant, the United States Supreme Court has stated:

> The totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific “tests” be satisfied by every informant’s tip. Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a “practical, nontechnical conception.” (citation omitted). “In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” (citation omitted.)

> In *Aguilar,* we required only that "the magistrate must be informed of *some of the underlying circumstances* from which the informant concluded that . . . narcotics were where he claimed they were, and *some of the underlying circumstances* from which the officer concluded that the informant . . . was "credible" or his information "reliable." (citation omitted).
>
> As our language indicates, we intended neither a rigid compartmentalization of the inquiries into an informant's "veracity," "reliability," and "basis of knowledge," nor that these inquiries be elaborate exegeses of an informant's tip. Rather, we required only that *some* facts bearing on two particular issues be provided to the magistrate.
>
> * * *
>
> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis . . . for [conclud[ing] "that probable cause existed. (citation omitted). We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*.

*Illinois v. Gates*, 462 U.S. 213, 231, 238-239 (1983).

As the Court of Appeals for the Second Circuit stated:

> A plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden. "Where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . . [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741,

> 746, 13 L.Ed.2d 684 (1965). In particular, where the officer requesting the search warrant relies on an informant, the magistrate's role is to examine the totality of the circumstances and to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.
> *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir. 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

Having reviewed the sworn application of Detective Mulhern and the search warrant issued by Judge Wray, I find that the defendant has failed in his burden to invalidate the search warrant issued by Judge Wray on February 27, 2015 and that his argument that probable cause was lacking for issuance of that warrant is without legal merit. Therefore, it is recommended that his motion to suppress the evidence seized pursuant to that warrant on this basis be denied.

Even if it were assumed that the search warrant authorizing the search of Apartment 1, 460 Eggert Road, Buffalo, New York lacked probable cause for its issuance, the "good faith doctrine" established in *United States v. Leon*, 468 U.S. 897 (1984) would apply and therefore the exclusionary rule would not apply. As the Court of Appeals for the Second Circuit has stated:

> The decision whether to issue a warrant requires answering the "commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Regardless of whether there was in fact probable cause, however, we do not apply the exclusionary rule where an officer obtained evidence by acting in reasonable reliance on a defective search warrant issued by a neutral magistrate. See United States v. Leon, 468 U.S. 897, 922–23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The exclusionary rule operates to deter illegal searches by police, not as a personal constitutional right of the aggrieved party. Id. at 906–07, 104 S.Ct. 3405. Therefore, "suppression is 'our last resort, not our first impulse.' " United States v. Clark, 638 F.3d 89, 99 (2d Cir.2011) (quoting Herring v. United States, 555 U.S. 135, 140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009)).

*United States v. Rickard*, 534 Fed. Appx. 35, 37 (2d Cir. 2013); *see also United States v. Clark*, 638 F.3d 89, 99-100 (2d Cir. 2011).

**B. Defendant's Request for a *Franks* Hearing**

The defendant's unsupported claims that the sworn application of Detective Mulhern and the sworn testimony of the confidential informant contained "false allegations that were made knowingly and in reckless disregard for the truth" are insufficient to cause this Court to take further action on the defendant's motion to suppress or to hold a hearing on the issue pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

> A defendant is permitted to challenge the veracity of a search warrant in limited circumstances. One such circumstance is where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information.

*United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000); *see also Franks v. Delaware*, 438 U.S. at 164-72.

*Franks v. Delaware* summarizes the standard that a defendant must meet in order to be entitled to such hearing:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence explained. . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue.

*Id.* at 171-72.

Stated another way, to require a *Franks* hearing, a defendant must make a substantial preliminary showing that (1) the warrant affidavit contains a false statement, (2) the allegedly false statement was made knowingly and intentionally or with reckless disregard for the truth, and (3) the allegedly false statement was necessary for a finding of probable cause. *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Levasseur*, 816

F.2d 37, 43 (2d Cir. 1987), *cert. denied*, 507 U.S. 954 (1993); *United States v. Longo*, 70 F. Supp.2d 225, 254 (W.D.N.Y. 1999).

> To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.

*Canfield*, 212 F.3d at 717-18, citing *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998); see also *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003); *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013).

Since the defendant has failed to provide an offer of proof at this time to support his conclusory allegations of falsity and reckless disregard for the truth, and has failed to "point out specifically the portion of the warrant affidavit that is claimed to be false," his motion for suppression of evidence should be denied and his request for a *Franks* hearing is denied.

**C. The Court Ordered DNA Sample**

The defendant alleges that "the state court order, at the People's request, directing defendant to permit the taking of his DNA material was in clear violation of CPL § 240.40(2)" and that the "People improperly used this prosecutorial discovery prior to the filing of the indictment and for the sole purpose of securing the instant indictment." Dkt. #29, p. 26, ¶ 92. As a result, the defendant claims this DNA evidence

must be suppressed from use at trial in this case. Dkt. #36, p. 7, ¶s 25-29. This argument of the defendant has been rejected by the New York Court of Appeals in *Matter of Abe A*., 56 N.Y.2d 288, 296-297 (1982) wherein the court stated:

> This also may be a good juncture at which to express our disagreement with the Appellate Division's conclusion that a formal charge that he had committed the crime was a prerequisite for the judicial directive that Jon L. make himself available for the drawing of the blood. We can find no case in which a court of general jurisdiction has been held to be without power to authorize a seizure or a search until a suspect is arrested and actually charged with a crime (cf. *Zurcher v Stanford Daily*, 436 U.S. 547). So, in *Cupp v Murphy* (412 US, *supra*, at p 294), the Supreme Court held the seizure of the fingernail scrapings there permissible though the defendant had not been "formally arrested". A like holding, significantly this time in a blood extraction case, may be found in *Aliff v State* (627 S.W.2d 166, 168-170.

The United States Supreme Court has ruled that police officers may take a DNA sample of an individual where probable cause existed to arrest that individual for a serious crime without any further showing of reasonable suspicion or probable cause relating to the need for the DNA sample. *Maryland v. King*, __ U.S. __, 133 S.Ct. 1958 (2013); *see also*, *United States v. Eldridge*, No. 09CR329A, 2013 WL2635207 (Jun. 12, 2013). In comparing the taking of DNA to a search incident to arrest, the Supreme Court stated: “[w]hen probable cause exists to remove an individual from the normal channels of society and hold him in legal custody, DNA identification plays a critical role in serving those interests.” *King*, 133 S.Ct. at 1971. In addition, the Supreme Court also analogized the taking of a DNA sample to the taking of fingerprints, stating:

> DNA identification is an advanced technique superior to fingerprinting in many ways, so much so that to insist on fingerprints as the norm would make little sense to either the forensic expert or a layperson. The additional intrusion upon the arrestee's privacy beyond that associated with fingerprinting is not significant, . . . , and DNA is a markedly more accurate form of identifying arrestees. A suspect who has changed his facial features to evade photographic identification or even one who has undertaken the more arduous task of altering his fingerprints cannot escape the revealing power of his DNA.

*King*, 133 S.Ct. at 1976.

In the present case, the defendant had been arrested on July 16, 2015 and charged with violating the drug laws of the State of New York and taken into custody by the Buffalo Police based on the search and seizure of illegal drugs and weapons found in the defendant's residence pursuant to a search warrant on March 7, 2015.

On July 29, 2015, the Hon. M. William Boller, J.S.C. issued an Order to Show Cause "for the taking of a DNA sample from [the defendant]." In response to this Order, the defendant appeared before Judge Boller on August 5, 2015 and Judge Boller issued an Order directing the defendant to comply with the taking of a buccal swab. A DNA sample was thereafter taken from the defendant which sample he now seeks to suppress as evidence at trial.

As previously found by this Court, the defendant was validly arrested by Buffalo Police on July 16, 2015 and taken into custody. (*See* Court's Report,

Recommendation and Order, Dkt. #45). Thus the holding of the United States Supreme Court in *Maryland v. King, supra* is most applicable in rejecting the defendant's argument to have the DNA sample suppressed as evidence, wherein the Court stated:

> In light of the context of a valid arrest supported by probable cause respondent's expectations of privacy were not offended by the minor intrusion of a brief swab of his cheeks. By contrast, that same context of arrest gives rise to significant state interests in identifying respondent not only so that the proper name can be attached to his charges but also so that the criminal justice system can make informed decisions concerning pretrial custody. Upon these considerations the Court concludes that DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.

*Id.* at 1980.

## **CONCLUSION**

Based on the foregoing, it is hereby recommended that defendant's motion seeking to suppress the use of all physical evidence at trial be denied in its entirety.

It is hereby **ORDERED** pursuant to 28 U.S.C § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statue, Fed.R.Crim.P. 58(g)(s) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED: June 21, 2017
Buffalo, New York

***S/ H. Kenneth Schroeder, Jr.***
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**